UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNIVERSITY COMMUNITY HOSPITAL,
INC. d/b/a Florida Hospital Tampa**

    **Plaintiff,**

v.                                                          Case No: 8:15-cv-628-T-27EAJ

**PROFESSIONAL SERVICE
INDUSTRIES, INC.,**

    **Defendant/Third Party Plaintiff,**

v.

**GEOTECHNICAL FOUNDATION SYSTEMS,
INC.,**

    **Third Party Defendant.**
_____/

## ORDER

**BEFORE THE COURT** are Third Party Defendant, Geotechnical Foundation System, Inc.'s ("GFS") Motion for Full and Final Summary Judgment (Dkt. 40), Third Party Plaintiff Professional Service Industries, Inc.'s ("PSI") response (Dkt. 58), PSI's Motion for Summary Judgment on Third Party Complaint Against Geotechnical Foundation Systems, Inc. (Dkt. 172), and GFS's response (Dkt. 221). Upon consideration, GFS's Motion is GRANTED and PSI's Motion is DENIED.

**I.  UNDISPUTED FACTS**

Plaintiff University Community Hospital d/b/a Florida Hospital Tampa ("FHT") entered into two consulting agreements with PSI, a geotechnical engineering firm, for geotechnical services and an underground fuel tank assessment for the Emergency Department Relocation Project at FHT (the "Project"). (Dkts. 40-1; 40-2). Under the agreements, PSI was to analyze the existing soil conditions

at the site, develop recommendations as to the type of foundation system for the site improvements, and supervise and monitor the auger cast pile installations. (Dkts. 40-1; 40-2; 40-3). PSI issued a Geotechnical Engineering Services Final Report with its recommendations. (Dkt. 40-3). PSI recommended an auger cast pile system. (*Id.* ¶ 3.3.3; Dkt. 24 ¶¶ 20, 23-24). The Final Report also included information regarding potential sinkhole development. (Dkt. 40-3 ¶¶ 2.6, 3.1). Based on PSI's recommendations, the Project was designed by the Project architect and structural engineer, who utilized auger cast piles. (Dkt. 2 ¶ 11).

GFS was hired by The Robins & Morton Group, the construction manager hired by FHT, to perform the auger cast piles installation. (Dkt. 40-5; Dkt. 24 ¶¶ 14, 28). PSI supervised GFS's installation of the auger cast piles and prepared inspection reports. (Dkt. 40-6). During construction, problems arose with the installation of the auger cast piles. PSI observed ground surface collapse due to sinkholes. (Millburg Dep., Dkt. 40-7 at 213:16-214:6). The foundation of the Women's Center experienced settlement, and installation was stopped. (*See* Dkt. 24 ¶ 31; Millburg Dep. at 261:7-25). As a result, it became necessary to design and implement repairs to the Women's Center building and for additional stabilization to the building. (*Id.* at 266:8-16).

FHT sued PSI for breach of the consulting agreements and professional negligence arising out of delay in the Project caused by settlement in the foundation of the Women's Center. PSI filed a Third Party Complaint against GFS for negligence and common law indemnity. (Dkt. 24). GFS moves for summary judgment on PSI's claims. PSI has likewise moved for summary judgment on its claims.[1]

---

[1] FHT and PSI also filed cross motions for summary judgment with respect to FHT's claims and PSI's defenses, which will be addressed by separate order.

## II. STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine disputes of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party fails to demonstrate the absence of a genuine dispute, the motion should be denied. *Kernel Records*, 694 F.3d at 1300 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606-08 (11th Cir. 1991)).

## III. DISCUSSION

Under Rule 14, Fed. R. Civ. P., "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty *who is or may be liable to it for all or part of the claim against it.*" In bringing GFS into the case as a Third Party Defendant, PSI essentially contends that GFS is responsible for any damages FHT suffered as a result of PSI's breach of its agreements with FHT or its professional negligence, that is, any damages recoverable by FHT from PSI.[2]

---

[2] *See, e.g.*, Dkt. 24 ¶ 46 ("GFS knew, or should have known, and could foresee, that if it breached its duty of care to PSI by negligently performing its work on the Project, GFS would cause harm and damage to the Plaintiff, the Project, the Hospital, others, and/or personal and other property located in the Project and/or Hospital, and thus,

### A. Negligence

PSI alleges that GFS is responsible to PSI for FHT's claimed damages because GFS was negligent in performing the auger pile installation. It will be assumed, as GFS suggests, for purposes of these motions, that GFS was negligent in its auger pile installation and its negligence caused the settlement and damage to the existing structure. (Dkt. 41 at 8).

GFS contends that it owed no duty to PSI, contractually or otherwise, pointing out that there was no privity between it and PSI. PSI counters that GFS's contractual duty to the general contractor to perform its work in a non-negligent manner extends to anyone who could foreseeably be injured by GFS's negligence, including PSI.[3] While PSI's contention may, as a general proposition, be accurate in the context of a personal injury or property damage caused by faulty or defective work,

---

cause damage to PSI because Plaintiff, Florida Hospital Tampa, would seek damages from PSI (as the geotechnical engineer) for the damages and delay caused by GFS' breaches of its duty of care.")

[3] Acknowledging its lack of privity with GFS, PSI, in two conclusory assertions, contends that it "holds a beneficial interest in GFS's governing contract since PSI was a Consultant of the Owner under the governing contracts on this Project to which GFS owed a duty to perform its contractual duties in accordance with the applicable standard or care," (Dkt. 58 at 2), and "PSI has a beneficial interest in the GFS contract with Robins & Morton, and, accordingly, a right of action under such contract to require compliance by GFS with any provision whose breach affects it." (Dkt. 172 at 16-17). PSI cites no authority, however, supporting those assertions and does not elaborate on them, merely citing a passage from a non-authoritative Florida practice treatise and a section in Am. Jur. 2d, Agency. (Dkt. 172, at 16-17).

PSI relies on Section 1.3 of GFS's contract in support of its contention that GFS's contractual duties to the contractor and owner extend to PSI as a "third party who might foreseeably be injured as a result of GFS's negligence." (Dkt. 58 at 5) ("Subcontractor is obligated and liable to Contractor to the same extent Contractor is obligated and liable to Owner."). And PSI argues that "GFS assumed all contractual duties owed to [FHT] and its Consultants in connection with GFS's scope of work on the Project." (Dkt. 58 at 12). But PSI reads Section 1.3 much too broadly, assuming a contractual duty which does not exist. Section 1.3 extends GFS's duties to its "Contractor" and FHT, the owner, but to no one else. While the general contractor and owner could assert claims against GFS for negligent performance of its contractual duties under the plain language of Section 1.3, no such right inures to PSI.

And there is no evidence that GFS's contract with Robins and Morton was intended to benefit PSI. *See A.R. Moyer, Inc. v. Graham*, 285 So. 2d 397, 402 (Fla.1973) ("'The question whether a contract was intended for the benefit of a third person is generally regarded as one of construction of the contract. The intention of the parties in this respect is determined by the terms of the contract as a whole, construed in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish.'") (quoting 17 Am.Jur.2d, Contracts s 304 (1964)). And as discussed, the contractual provisions quoted in PSI's pleadings do not demonstrate that any benefit was intended to flow to PSI.

4

PSI cites no authority supporting its contention in the context of its Third Party claims against GFS. Specifically, PSI cites no authority extending a subcontractor's contractual duty owed to its contractor to a supervising engineer hired by an owner, whose only damages are those claimed by the owner for professional negligence or breach of contract.

Basic tort law explains why PSI's negligence claim against GSI fails. No duty flowed from GFS to PSI. To sustain its negligence claim, PSI must demonstrate: (1) a duty, or obligation, recognized by the law, requiring GFS to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) a failure on GFS's part to conform to the standard required - a breach of the duty; (3) a reasonably close causal connection between the conduct and the resulting injury - "proximate cause"; and (4) actual loss or damage. *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1227 (Fla. 2010) (citing *Clay Elec. Coop., Inc. v. Johnson*, 873 So.2d 1182, 1185 (Fla. 2003)).

"[T]he question of whether a duty is owed is linked to the concept of foreseeability. [The Florida Supreme Court has] held that duties may arise from four general sources: (1) legislative enactments or administrative regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) *a duty arising from the general facts of a case.*" *Id.* (emphasis added). This last category "encompasses class of cases in which the duty arises because of a foreseeable zone of risk arising from the acts of the defendant." *Id.*; *McCain v. Florida Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992) ("Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others.").

In sum, it was not foreseeable that PSI, an engineering firm hired as a consultant by the

owner, could be damaged economically by GFS's negligent performance as a subcontractor. There was no privity between the two, and GFS had no economic, supervisory, or other control over PSI.[4] Moreover, there is no nexus between the alleged cause of PSI's injury (GFS's negligent installation of the auger cast piles), and PSI's economic loss resulting from being sued by the owner for professional negligence and/or contractual breach.[5] *See McElvy, Jennewein, Stefany, Howard, Inc. v. Arlington Elec., Inc.*, 582 So. 2d 47, 50 (Fla. 2d DCA 1991).

Finally, as GFS points out, to the extent PSI contends that GFS caused or contributed to FHT's damages, the proper vehicle to apportion fault would have been for PSI to assert a *Fabre* defense. *See Fabre v. Martin*, 623 So.2d 1182 (Fla. 1993).

Since GFS did not owe a duty to PSI, summary judgment in favor of GFS on this claim is due to be granted.

### B. Common Law Indemnity

In its claim for common law indemnity, PSI alleges that it is without fault, GFS's negligence is the sole cause of FHT's damages, and therefore GFS is responsible for any damages awarded FHT

---

[4] *See A.R. Moyer, Inc. v. Graham*, 285 So. 2d 397 (Fla.1973) (when an architect's contract vests supervisory responsibilities in the architect, in addition to its contractual duty to the owner, the architect carried a "concurrent duty not to injure foreseeable parties not beneficiaries of the contract," including the general contractor, recognizing that a supervising architect had the power of economic life and death over the general contractor); *McElvy*, 582 So. 2d at 49 (Noting that "[c]ases attempting to apply *Moyer* to a given set of facts underscore the necessity that supervisory duties exist in order to allow a case to be tried under a tort theory where the plaintiff lacks privity or status as an intended third-party beneficiary" and collecting cases.). *See also Spancrete, Inc. v. Ronald E. Frazier & Assocs., P.A.*, 630 So. 2d 1197, 1198 (Fla. 3d DCA 1994) (duty of care owed by a supervising architect to general contractor does not extend to a subcontractor).

[5] The cases PSI relies on are distinguishable. Both cases involved property damage or personal injury. In *Gallichio v. Corp. Grp. Serv., Inc.*, 227 So. 2d 519, 520–21 (Fla. 3d DCA1969), the court merely applied the general rule of forseeability to a dock worker injured when a ladder collapsed, allegedly due to the negligence of a party contractually bound to perform safety inspections ("one who may foreseeably be injured by the negligent performance of a contractual duty has the right to maintain an action against the allegedly negligent performer even though he is not in privity with that performer"). In *Luciani v. High*, 372 So. 2d 530, 531 (Fla. 4th DCA1979), homeowners were permitted to bring an action for property damages caused by the negligent performance of a contractual duty by the engineer with whom they had no contract.

against PSI. (Dkt. 24 ¶ 60). GFS counters that PSI cannot be liable to FHT vicariously, constructively, derivatively, or technically for GFS's negligence, and therefore PSI has no cause of action for common law indemnity. GFS is correct.

"Indemnity is a right which inures to one who discharges a duty owed by him, but which, as between himself and another, should have been discharged by the other, and is allowable only where the whole fault is in the one against whom the indemnity is sought." *Houdaille Indus., Inc. v. Edwards*, 374 So. 2d 490, 492 (Fla.1979). "It shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing for which the former is held liable." *Id.* (quoting *Mims Crane Service, Inc. v. Insley Manufacturing Corp.*, 226 So. 2d 836 (Fla. 2d DCA 1969)).

PSI's common law indemnity claim fails because (1) PSI did not discharge a duty owed to FHT which should have been discharged by GFS, and (2) there was no special relationship between PSI and GFS giving rise to vicarious, constructive or derivative liability on PSI for GFS's negligence.

To establish a claim for indemnity, (1) the party seeking indemnity must be without fault and its liability must be vicarious; (2) the party against whom indemnity is sought must be at fault; and (3) there must be a special relationship between the parties. *Dade County Sch. Bd. v. Radio Station WQBA*, 731 So.2d 638, 642 (Fla. 1999). "Importantly, the right to indemnification as common law derives from a special relationship between the parties which has obligated one party to pay because of its vicarious, constructive, derivative, or technical liability for the wrongful acts of the other." *Dominion of Canada v. State Farm Fire and Cas. Co.*, 754 So. 2d 852, 855 (Fla. 2d DCA 2000).

In its suit against PSI, FHT alleges that PSI breached the two consulting agreements and was professionally negligent in its initial ground analysis and recommendations regarding the auger cast piles, and by failing to perform certain actions with respect to the auger cast pile installation, including failing to report GFS's negligence and to recommend that GFS's work be stopped.[6] If it prevails, FHT will have demonstrated that PSI was at fault. PSI cannot expect indemnification for its own negligence or breach of contract.

Nor does PSI explain how it would be vicariously liable for GFS's negligence. There is no evidence of a special relationship between the two that would make PSI vicariously, constructively, derivatively, or technically liable for GFS's negligence. Absent a special relationship between PSI and GFS which would make PSI vicariously, constructively, derivatively, or technically liable for GFS's negligence, PSI has no right of indemnification. *Houdaille*, 374 So. 2d at 492.

Accordingly, PSI is unable, as a matter of law, to establish the elements of its indemnification claim against GFS (the party seeking indemnity must be without fault and its liability must be vicarious). Summary judgment is therefore due to be granted in favor of GFS on PSI's common law indemnification claim.

Accordingly,

1. Third Party Defendant, Geotechnical Foundation System, Inc.'s ("GFS") Motion for Full and Final Summary Judgment (Dkt. 40) is **GRANTED.** PSI's Motion for Summary Judgment on Third Party Complaint Against Geotechnical Foundation Systems, Inc. (Dkt. 172) is **DENIED.**

---

[6] As PSI acknowledges, in its suit against PSI, FHT "claims that PSI: caused direct and consequential damages to Florida Hospital Tampa, including but not limited to the cost of investigative fees, remedial design services, remedial construction services, additional testing, lost revenue due to delays to the subject project, and the additional general condition cost paid to the general contractor due to the delays in completion of the project, and other damages." (Dkt. 200 at 7-8; Dkt. 2 ¶¶ 19, 24, 28). It is those damages for which PSI seeks indemnification from GFS. (Dkt. 24 ¶¶ 50, 59).

2. The Clerk is directed to **ENTER FINAL JUDGMENT** in favor of Geotechnical Foundation System, Inc. and against Professional Service Industries, Inc.

3. GFS's Motion to Exclude Professional Services, Inc.'s Expert Witness Opinion (Dkt. 41) and Daubert Motion and Motion to Strike Regarding the Testimony of Defendant/Third Party Plaintiff Professional Services, Inc.'s Expert Dennis Murphy (Dkt. 204) are **DENIED as moot**.

**DONE AND ORDERED** this 24th day of February, 2017.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record